UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANTHONY BARRIENTEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>  Defendant. | Case No. C10-5642-JLR-BAT<br><br>**REPORT AND RECOMMENDATION** |

Anthony Barrientez seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends that the ALJ erred by (1) calling Thomas McKnight, Ph.D., as the medical expert and taking his testimony by telephone; (2) rejecting the opinions of examining psychologists William Chalstrom, Ph.D., David Dixon, Ph.D., and Daniel Neims, Psy.D., examining psychiatrist Paul Michels, M.D., and examining physician Mark Heilbrunn, M.D.; (3) rejecting the lay witnesses evidence; (4) assessing Mr. Barrientez's residual functional capacity; and (5) finding that Mr. Barrientez was capable of performing jobs that exist in significant numbers in the national economy. Dkt. 18. As discussed below, the Court recommends that the Commissioner's decision be **AFFIRMED** and this case **DISMISSED** with prejudice.

REPORT AND RECOMMENDATION - 1

## FACTUAL AND PROCEDURAL HISTORY

Mr. Barrientez was 43 years old on his alleged onset date and is currently 52 years old. Tr. 223.  He completed the 11th grade and obtained a GED.  Tr. 254.  He has worked as a caregiver, landscaper, mail clerk, insulation installer, and handyman.  Tr. 239.  On November 22, 2002, he applied for benefits, alleging disability as of September 1, 2002.  Tr. 223, 841.  His applications were denied initially and on reconsideration.  Tr. 56, 61, 846, 851.  The ALJ conducted a hearing on November 30, 2005, and on June 7, 2006 issued a decision finding Mr. Barrientez not disabled.  Tr. 43-51.

Mr. Barrientez sought review and the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings.  Tr. 52-55.  The ALJ held another hearing on April 9, 2007, and on February 29, 2008, issued a second decision denying Mr. Barrientez's applications.[1]  Tr. 18-37.  As the Appeals Council denied Mr. Barrientez's request for review, the ALJ's 2007 decision is the commissioner's final decision.  Tr. 10-14.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

**Step one:**  Mr. Barrientez has not engaged in substantial gainful activity since September 1, 2002.  Tr. 23.

**Step two:**  Mr. Barrientez has the following severe impairments: diabetes mellitus with corollary effects and a depressive disorder.  *Id*.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[3]  Tr. 28.

---

[1] The record also contains the transcript of a hearing conducted on November 30, 2008.  Tr. 1018-48.  Plaintiff's attorney states he has no knowledge of this hearing, and its significance is unclear.  *See* Dkt. 18 at 1 n.1.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

**Residual Functional Capacity:** Mr. Barrientez had the residual functional capacity to perform most sedentary work. Mr. Barrientez retains the ability to lift and carry up to 10 pounds at a time, and occasionally lift or carry small articles like docket files, ledgers, and small tools. He is able to sit for about 6 hours in an 8-hour workday at 1 hour intervals, and needs the option to stand for up to 5 minutes at or near his workstation during this 1 hour interval. He can also stand and walk for about 2 hours in an 8-hour workday. He should receive normal work breaks. Due to his mental impairments, he is limited to performing entry level jobs that require only simple and routine tasks. Tr. 30.

**Step four:** Mr. Barrientez cannot perform his past work. Tr. 35.

**Step five:** As there exists a significant number of jobs Mr. Barrientez can perform, he is not disabled. Tr. 36-37.

## DISCUSSION

A.   **Medical expert**

Mr. Barrientez argues that the ALJ erred by calling Thomas McKnight, Ph.D., as the medical expert in this case. Dkt. 18 at 20. Mr. Barrientez asserts that the ALJ "hand-picked" Dr. McKnight to testify, rather than selecting an expert from the roster in rotation as the Social Security Administration ("SSA") Hearings, Appeals, and Litigation Law Manual ("HALLEX") requires. In support of this contention, Mr. Barrientez refers to the SSA's response to another attorney's Freedom of Information Act request, which shows that the ALJ called Dr. McKnight as a medical expert 12 times between 2003 and 2006, while during that time only one other ALJ called Dr. McKnight to testify on one other occasion. Tr. 870-94. Mr. Barrientez asserts that this "could not have been random." Dkt. 18 at 21. Mr. Barrientez's argument, which implies some sort of improper motive on the ALJ's part, is based on pure speculation. In addition, the HALLEX does not impose judicially enforceable duties on the ALJ. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010). The Court declines to find that the ALJ improperly selected Dr. McKnight as the medical expert.

Mr. Barrientez further argues that the ALJ erred by taking Dr. McKnight's testimony by

REPORT AND RECOMMENDATION - 3

telephone over his objection. Dkt. 18 at 21. At Mr. Barrientez's second hearing, his counsel objected to Dr. McKnight's telephonic testimony, arguing that telephonic testimony made it difficult for the expert and for Mr. Barrientez to assess demeanor. Tr. 1054-55. Mr. Barrientez now argues that the telephonic testimony violated SSA regulations and internal procedures.[4] Dkt. 18 at 21.

Even if the Court were to agree with Mr. Barrientez that the ALJ improperly took Dr. McKnight's testimony by telephone, the error would be harmless because Dr. McKnight did not give a substantive opinion about Mr. Barrientez's impairments. At the hearing, Dr. McKnight testified that there was an inherent problem with Mr. Barrientez's file. Tr. 1056. He noted that Mr. Barrientez had been diagnosed with a variety of mental impairments, including mood disorders of various degrees, alcohol dependence in remission, possible cognitive disorder, and agoraphobia, but Dr. Chalstrom's psychological evaluation reflected significant over-reporting of existing difficulties and included test results that were inconsistent with Mr. Barrientez's diagnoses. Tr. 1056-57; *see also* Tr. 695. Dr. McKnight testified that Dr. Chalstrom discussed potential malingering and secondary gain issues, but diagnosed major depressive disorder, recurrent, of moderate severity, panic disorder with agoraphobia, and episodic cannabis abuse. Dr. McKnight opined that these things "don't go together," and, in order to give Mr. Barrientez the benefit of the doubt, he should undergo another examination, including retesting and an hour-by-hour description of his daily living activities. Tr. 1057. Dr. McKnight did not opine as to the existence, nature, or severity of Mr. Barrientez's impairments. Thus, Dr. McKnight's ability to

---

[4] Specifically, Mr. Barrientez argues that because 20 C.F.R. § 404.950(e) provides that witnesses may appear at a hearing in person or, under certain circumstances, by video teleconferencing, telephonic testimony is prohibited by exclusion. He also points to SSA Program Operations Manual System ("POMS") DI 33025.085, which governs conducting disability hearings by telephone, and which requires a claimant's written consent to conduct a hearing by telephone.

REPORT AND RECOMMENDATION - 4

assess Mr. Barrientez's demeanor, and vice versa, were not relevant to his testimony or Mr. Barrientez's evaluation of it.  Any error in taking Dr. McKnight's testimony by telephone did not prejudice Mr. Barrientez and was thus harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error may be harmless where the mistake was nonprejudicial to the claimant).

### B. Medical opinions

Mr. Barrientez argues that the ALJ erred in rejecting the opinions of examining psychologists William Chalstrom, Ph.D., David Dixon, Ph.D., and Daniel Neims, Psy.D., and examining psychiatrist Paul Michels, M.D.  Dkt. 18 at 23.  Mr. Barrientez asserts in his opening brief that the ALJ failed to provide either clear and convincing or specific and legitimate reasons for rejecting these opinions.  However, he fails to develop this argument and instead only refers to his summary of the doctors' opinions in his facts section.  The Court may deem arguments that are unsupported by explanation to be waived.  *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).

Mr. Barrientez attempts to remedy his failure to develop this argument in his reply brief, where he faults the ALJ for providing one general reason for rejecting these opinions. Dkt. 29 at 4-5.  The ALJ found that, given Mr. Barrientez's lack of credibility, especially in regard to his mental symptoms, it was difficult to give the examining doctors' opinions any weight.  Tr. 35.  An ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Mr. Barrientez does not challenge the ALJ's adverse credibility

REPORT AND RECOMMENDATION - 5

finding. Thus, even a cursory review shows that the ALJ did not err in discounting these medical opinions.[5]

Mr. Barrientez further argues that the ALJ erred by failing to credit certain findings of Mark Heilbrunn, M.D. Specifically, Mr. Barrientez notes Dr. Heilbrunn's findings that Mr. Barrientez had decreased hand coordination in thumb opposition, limited manipulative range of motion in his right shoulder, and could be expected to sit for at least 20 to 25 minutes uninterrupted. Tr. 784-85. Mr. Barrientez argues that the ALJ erred by failing to incorporate these findings into his residual functional capacity assessment.

Although Dr. Heilbrunn noted decreased hand coordination in thumb opposition and limited manipulative range of motion in the right shoulder, he did not opine as to the degree of functional limitations, if any, caused by these impairments. There was thus nothing for the ALJ to incorporate into his residual functional capacity assessment related to these findings. In addition, Dr. Heilbrunn opined that Mr. Barrientez could be expected to sit for at least 20 to 25 minutes uninterrupted, as he did in the examination, but he did not opine as to maximum time Mr. Barrientez could sit without changing positions. The ALJ's finding that Mr. Barrientez could sit for one-hour intervals, with the option to stand for up to 5 minutes at or near his workstation during this one-hour interval is not inconsistent with Dr. Heilbrunn's opinion. The ALJ did not err in assessing Dr. Heilbrunn's opinion.

**C.    Lay witness evidence**

Mr. Barrientez next argues that the ALJ erred in assessing the lay witness evidence. Lay

---

[5] Mr. Barrientez also argues for the first time in his reply that the ALJ erred in rejecting the opinions of consulting psychologists Cynthia Collingwood, Ph.D., and Bruce Eather, Ph.D., and treating physician Regina Bonnavie, M.D. Dkt. 29 at 6. Issues raised for the first time in a reply brief are waived and will not be considered by the Court. *United States ex rel. Meyer v. Horizon Health Corp*. 565 F.3d 1195, 1199 n.1 (9th Cir. 2009). The Commissioner has had no opportunity to respond to these new arguments, and the Court will not consider them.

REPORT AND RECOMMENDATION - 6

testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific, germane reasons for doing so. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In a letter dated March 24, 2005, Mr. Barrientez's friend David Collinson stated that over the previous two years, he noticed that Mr. Barrientez had problems with his memory and had to have things repeated to him. Mr. Collinson reported that Mr. Barrientez seemed to have problems standing for long, he had difficulty holding things in his hands, and was usually sleeping when Mr. Collinson phoned him. Tr. 296. In a third-party function report, Frances Cross, the mother of Mr. Barrientez's daughter, stated that Mr. Barrientez sometimes needed reminders to take care of personal needs and to take medicine. Tr. 330-32. The ALJ found that Mr. Collinson's and Ms. Cross's statements were generally corroborative of Mr. Barrientez's allegations, but he did not find them probative in light of the medical evidence and other factors. Tr. 33. The ALJ found that these witnesses relied on Mr. Barrientez's subjective descriptions of his impairments, which were not highly credible. The ALJ also concluded that these witness statements cannot outweigh the analysis of the objective clinical and laboratory evidence, as well as Mr. Barrientez's overall functional abilities. Tr. 33.

Mr. Barrientez argues that the ALJ did not give germane reasons for giving these statements little weight because the statements are based on the witnesses' observations of Mr. Barrientez, not Mr. Barrientez's reports to them. Dkt. 18 at 25-26. However, these statements were based at least in part on Mr. Barrientez's subjective reports, and, because those reports were not fully credible, this was a germane reason for rejecting them. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). And to the extent the ALJ gave these statements

REPORT AND RECOMMENDATION - 7

1  less weight than the other evidence, it is the ALJ's job to evaluate and weigh the evidence.  The

2  ALJ's decision to give the medical and other evidence more weight is a rational of the evidence

3  that this Court should not disturb.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

4     In addition, as the Commissioner points out, the ALJ's residual functional capacity

5  finding is not inconsistent with these lay witness statements.  The ALJ limited Mr. Barrientez to

6  standing for 2 hours in an 8-hour workday, lifting and carrying up to 10 pounds at a time, and

7  entry level jobs that require only simple and routine tasks.  Tr. 30.  These limitations are not

8  inconsistent with the witness's observations of Mr. Barrientez's difficulty standing, holding

9  things, and need for reminders to complete tasks.

10    The record also contains a case note from a state Department of Social and Health

11 Services case worker that Mr. Barrientez identifies as SSI facilitator Deanna Johansen.  Tr. 355.

12 In the case note, dated November 6, 2006, Ms. Johansen stated that Mr. Barrientez was quite

13 depressed and feeling overwhelmed by his diabetes, a doctor had evaluated his shoulder but was

14 not willing to operate on it because of Mr. Barrientez's mental state, and these issues along with

15 his mental health difficulties were making it difficult to cope.  Ms. Johansen further stated that

16 Mr. Barrientez did not leave his house except for medical appointments, he did nothing for fun

17 and could not stand to be around people, and he was frustrated by all the things he had to do in

18 regards to Social Security.  Tr. 355.

19    The ALJ did not mention Ms. Johansen's case note in his decision.  Mr. Barrientez argues

20 that this failure is reversible error.  Dkt. 18 at 26.  An ALJ must explain why "significant,

21 probative evidence has been rejected."  *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

22 However, while the ALJ must "make fairly detailed findings in support of administrative

23 decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all

REPORT AND RECOMMENDATION - 8

evidence presented." *Id*. at 1394-95.  Mr. Barrientez faults the ALJ for overlooking a single case note from a state agency employee in a record of over 1100 pages.  Other than alleging that this case note, like Mr. Collinson's and Ms. Klaus's opinions, is generally corroborative of Mr. Barrientez's testimony, Mr. Barrientez fails to show that this evidence was either significant or probative.  The ALJ's failure to mention this case note does not necessitate reversal.

### D.  Residual functional capacity finding

Mr. Barrientez argues that, because of the errors he alleges above, the ALJ erred in assessing his residual functional capacity.  Dkt. 18 at 26.  However, as the Court has concluded that the ALJ did not err in calling Dr. McKnight to testify or in evaluating the medical opinions and lay witness evidence, this argument fails.  The ALJ's assessment of Mr. Barrientez's residual functional capacity was based on all the limitations the ALJ found credible and supported by substantial evidence.  The ALJ's residual functional capacity assessment should be upheld.

### E.  Step-five determination

Finally, Mr. Barrientez argues that the ALJ erred in formulating a hypothetical for the vocational expert and in finding that jobs exist in significant numbers in the national economy that Mr. Barrientez can perform.  Dkt. 18 at 27.  Again, this argument is premised solely on Mr. Barrientez's claimed errors that have been rejected above.  Because the ALJ included all of Mr. Barrientez's limitations that the ALJ found credible and supported by substantial evidence in the hypothetical he posed to the vocational expert, the ALJ did not err in relying on the vocational expert's testimony to find Mr. Barrientez not disabled at step five.  In addition, Mr. Barrientez failed to develop his assertion that the jobs identified by the vocational expert did not have significant numbers in Washington State and thus waived the argument.  *See Avila*, No. C07-1331, 2008 WL 4104300 at *2 .

REPORT AND RECOMMENDATION - 9

**CONCLUSION**

For the foregoing reasons, the Court recommends that the Commissioner's decision be **AFFIRMED** and this case **DISMISSED** with prejudice.  A proposed order accompanies this Report and Recommendation.

Any objections to this Recommendation must be filed and served upon all parties no later than **June 8, 2011.**  If no objections are filed, the matter will be ready for the Court's consideration on that date.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect your right to appeal.

DATED this 24th day of May, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge